[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10447
Non-Argument Calendar
_____

D.C. Docket No. 5:12-cv-00325-MW-EMT

BRIAN MEAD,

                                                        Plaintiff - Appellee,

versus

FRANK MCKEITHEN, et al.,

                                                        Defendants,

DOUG PIERCE,

                                                        Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(July 7, 2014)

Before PRYOR, MARTIN, and COX, Circuit Judges.

PER CURIAM:

## I. Introduction

On September 7, 2009, Brian Mead pulled into the driveway of his home and was immediately accosted by off-duty sheriff's deputy Doug Pierce. Pierce identified himself as a law enforcement officer but wore no uniform and could produce no identification supporting his claim. On top of his inability to produce identification, it is undisputed that Pierce smelled of alcohol when he confronted Mead. Consequently, when Pierce forcibly grabbed Mead and attempted to subdue him, a struggle ensued and Mead pulled away from Pierce, escaping his grasp. Pierce later represented to on-duty deputies who arrived at Mead's home that Mead had assaulted him. The on-duty deputies arrested Mead for assault on a law enforcement officer.

Mead then filed the present suit against Pierce and others.[1] The claim against Pierce is that Pierce caused Mead to be seized in violation of the Fourth Amendment. Pierce moved for summary judgment, asserting a defense of qualified immunity. The district court denied Pierce's motion for summary judgment, saying that "the facts are very much in dispute as to what occurred

---

[1] Mead sued his neighbors, Kenneth and Tara Bibbs, and the Bay County Sherriff, Frank McKeithen. The disposition of the case as to these defendants is not relevant to this appeal.

2

between Mead and Pierce" and that Pierce was not entitled to qualified immunity. (Doc. 85 at 3).  Pierce appeals.  We affirm.

## II. Facts

The parties dispute the facts in this case.  But the basic facts are well-known to both parties.  Mead and the Bibbs are neighbors.  But they had limited interaction prior to the incident giving rise to this suit.  On September 7, 2009, the Bibbs' boston terrier escaped from their yard and encountered Mead's two pit bulls.  The pit bulls killed the Bibbs' dog.  In response, Kenneth Bibbs, an off-duty sheriff's deputy, shot and killed the two pit bulls with his shotgun—continuing to shoot the dogs even after it was apparent they were dead.  After Kenneth finished shooting the dogs, Tara Bibbs, his wife, emptied her handgun into the dogs as well. In the wake of all these gunshots, Pierce, also an off-duty sheriff's deputy, left his own home down the street and walked to the Bibbs' house.  When he arrived, he found the three dead dogs and the Bibbs.

Shortly after Pierce arrived, Mead pulled into his own driveway next door to the Bibbs' house.  When Mead stepped out of his truck, Pierce immediately approached him.  Pierce was wearing civilian clothes with no indication of his law enforcement status.  Pierce forcibly grabbed Mead.  Either immediately before or simultaneously with grabbing Mead, Pierce identified himself as a law enforcement officer.  Despite Mead's repeated request for Pierce to produce

3

identification confirming his status as a law enforcement officer, Pierce did not produce any such identification because he did not have any on him.  Pierce had been drinking before arriving at the Bibbs' house, and his breath smelled of alcohol.  When Pierce failed to produce any law enforcement identification, Mead pulled away from Pierce and ran to the other side of his truck.  Pierce then struck Mead in the back of the head, knocking Mead to the ground.  It is undisputed that Mead did not ball up his fists or make any threatening gestures towards Pierce.[2]  Pierce then retreated to the street to await the arrival of uniformed officers.  Pierce discussed the incident with the uniformed officers and filled out a probable cause affidavit to arrest Mead for assault on a law enforcement officer—a charge on which a uniformed officer then arrested Mead.

### III. Issue on Appeal and Standard of Review

The sole issue on appeal is whether the district court properly denied Pierce qualified immunity.  (Appellant's Initial Br. at 2).  We review a district court's denial of qualified immunity de novo, viewing the facts in the light most favorable to the nonmoving party.  *Waldrop v. Evans*, 871 F.2d 1030, 1032 (11th Cir. 1989).

### IV. Contention of the Parties

---

[2] Pierce conceded this fact for purposes of summary judgment. (Doc. 58 at 4 n.2).

Pierce contends that the district court erred by failing to find that he had probable cause, or at least arguable probable cause, to arrest Mead for "some" offense—even if it was not the offense for which Mead was actually arrested. (Appellant's Initial Br. at 7,8).

Mead, on the other hand, contends that the district court correctly declined to grant Pierce qualified immunity because there was not probable cause to arrest Mead.  And, Mead contends that qualified immunity on the basis that he could have been arrested on a lesser charge is only available for a good-faith mistake by Pierce.  Finally, Mead contends that arguable probable cause is not a lesser standard as Pierce contends, but simply goes to whether a law was clearly established at the time of the arrest—which is an objective standard.

## V. Discussion

To determine whether an officer is entitled to qualified immunity, we engage in a two-step analysis.  *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818 (2009).  First, we ask whether the facts alleged by a plaintiff show a violation of a constitutional right.  *Id.*  Second, we ask whether the right was clearly established at the time of an officer's alleged misconduct.  *Id.*  A court may exercise its sound discretion in determining which step of the analysis it should first address.  *Id.*

5

We first address the constitutional prong.  Mead contends that Pierce caused his arrest in violation of his Fourth Amendment right to be free from an unreasonable seizure.  An arrest of a person constitutes a seizure.  *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1137 (11th Cir. 2007).  And a seizure by arrest is "reasonable" only if probable cause exists.  *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004).  Probable cause exists when "law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992). We determine whether probable cause existed by looking at the totality of the circumstances.  *See Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998).

It is difficult to discern the basis for Mead's Fourth Amendment claim from the complaint in this case. (*See* Doc. 1-1).  Count III (the relevant count) is part of a "shotgun pleading" of the kind we have criticized for many years.  *See*, e.g., *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117 (11th Cir. 2013).  In this single count—Count III—Mead asserts claims against Pierce, Sheriff McKeithen, Kenneth Bibbs, and Bibb's wife, Tara Bibbs.

Count III does not allege that Pierce falsified an affidavit that resulted in Mead's arrest.  But Pierce does not argue on appeal that this falsified affidavit was

6

not the basis of Mead's Fourth Amendment claim in Count III. And, the district court and the parties litigated this case based upon a falsified affidavit. Our court has encountered this issue before. "Pursuant to Fed. R. Civ. P. 15(b), '[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.' Although Rule 15 uses the word 'tried,' we accept Rule 15(b) as a guide—by way of analogy, at the appellate level—for cases never tried, but litigated on motions." *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1023 n.4 (11th Cir. 2001) (en banc), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007). In *Marsh*, we said that even though it was clear from the face of the plaintiff's complaint that she had not stated a claim against a local sheriff in her individual capacity, we said that "we accept this case and will decide this case as one in which the complaint purports to sue the Sheriff in both her official and individual capacities. The reason is that, in the district court, the parties and the district judge clearly litigated the case in that way." *Id.* We review this case as it was actually litigated by the parties before the district court; thus, we need not consider whether count III in Mead's complaint actually states a claim because the parties and the district court assumed that it did.

7

Here, it is clear that viewing the facts in the light most favorable to the non-moving party—Mead—there was not probable cause to arrest Mead for assault on a law enforcement officer. *See* Fla. Stat. § 784.07 (2009). The fact that Pierce did not actually make the arrest is irrelevant since we have held that where falsified evidence provided by an officer is necessary to substantiate the probable cause for a plaintiff's arrest, that officer can be held liable. *See Kingsland*, 382 F.3d at 1232 (11th Cir. 2004) (citations omitted). And here, Pierce's affidavit was necessary to establish probable cause for Mead's arrest since it was the only evidence suggesting to the uniformed officers that Mead had in any way threatened Pierce.

Even if probable cause did not exist to arrest Mead, Pierce does not automatically lose qualified immunity. Instead, we next examine whether the law regarding what constituted probable cause was clearly established at the time of Mead's arrest. "In wrongful arrest cases, we have frequently framed the 'clearly established' prong as an 'arguable probable cause' inquiry. In other words, we have said that when an officer violates the Constitution because he lacked probable cause to make an arrest, the officer's conduct may still be insulated under the second prong of qualified immunity if he had 'arguable probable cause' to make the arrest." *See Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009). In other words, would it "be clear to a reasonable officer this conduct was unlawful in the

8

situation he confronted"? *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151, 2156 (2001).

Again, viewing the facts in the light most favorable to Mead, it is clear that Pierce's conduct has long been prohibited. Falsifying facts to establish probable cause is clearly unconstitutional and has been "clearly established" long before Mead's arrest. *Kingsland*, 382 F.3d at 1232 (11th Cir. 2004).

Lastly, we agree with the district court's analysis that even if probable cause existed for Pierce to cause Mead to be arrested for "some" offense, even if not for the offense actually charged, Pierce is not entitled to qualified immunity. The district court's opinion properly analyzes and rejects this argument. (District Court's Opinion, Doc. 85 at 8–9).

## VI. Conclusion

Accordingly, we agree with the district court that Pierce has not demonstrated entitlement to qualified immunity.

**AFFIRMED.**

9